We move to the second case, this morning Ochoa and Anderson v. State Farm Life Insurance. Mr. Friedman. Good morning, your honors. My name is Andrew Friedman. I represent the plaintiffs. This appeal arises from an order by the district court granting motions to dismiss plaintiffs' contracts. Claims in the underlying cases. Plaintiffs' contract claim based on two inextricably intertwined provisions of the Illinois Insurance Code is straightforward. Section 224.1e of the code requires that every participating life insurance policy delivered or issued from Illinois must contain a provision that, quote, is enforceable as a matter of contract law. Section 243 of the insurance code, in turn, enacted at the same time that section 224 was adopted in its current form, sets a maximum limit on the amount of participating surplus that the company may retain each year. Any participating surplus in excess of that contingency reserve limit must be distributed to the par policies as dividends. Is that what section 243 says? Section 243. It doesn't make that part of the dividend. It doesn't mandate that that be part of the annual dividend. Section 243, your honor, has to be read in pari materia with section 224. Both statutes address the same subject matter. Both statutes address the same class of persons. And both statutes were enacted for the same purpose, which was to prevent insurance companies from retaining excess surplus and withholding it from the participating policyholders. And so when those two statutes are read together, as they must, the inescapable conclusion is that when 224 states that par policyholders have a mandatory contractual right to participate in surplus in dividends, that means divisible surplus determined in accordance with section 243. By definition, the only surplus that par policyholders can participate in under 224 is the divisible surplus, which results from application of section 243. Our interpretation is consistent with the contemporaneous legal authorities that were issued at about the time that these statutes were enacted. But where in 243 does it say exactly the amount that must be distributed? Section 243, which was enacted to prevent insurance companies from... But where in the language, Mr. Friedman, of 243 does it say exactly the amount that must be distributed? If you look at the decision in Lubin, which was decided at about the time, eight years after these statutes were enacted, Lubin gives meaning to the statutory terminology. Is there anything in the plain language of section 243 that indicates or directs the percentage that must be distributed? 243 refers to the contingency reserve. In the Lubin decision, the court analyzed what that language means. So again, is there anything in 243 itself that says what percentage of contingency reserve must be distributed? No, 243 simply imposes a limit on what the company can retain. And by definition, Your Honor, there are two buckets. There is a retained surplus, which is the contingency reserve under Lubin, and there's divisible surplus, which the court in Lubin said is the amount that is distributed as dividends, and which the court in Kuhn's case also said that divisible surplus and dividends are interchangeable. They mean the same thing. And does your argument rely solely on the interpretation of those two statutes as opposed to any express provision in the contracts themselves? There is language in the contracts, Your Honor, that is completely consistent with the statutory scheme, although I would say that it's relatively ambiguous. What is that language, that they should make the distributions? There are two different contracts at issue here, Your Honor. In the country life policy, the provision that was purported to be included to comply with Section 224 provides that each year we determine how much money may be paid to our policy owners as divisible surplus. And divisible surplus, per the Lubin case, is what is left over after the contingency reserve is determined in accordance with the statute. But there's nothing in the contract itself that says what that divisible surplus must be or how they are going to calculate it, correct? There is not. The term divisible surplus is a term of art. The terms of art are construed in accordance with their technical meanings. And divisible surplus, according to the published decision in Lubin and Coons, is the same as the surplus to which policyholders participate through dividends. It doesn't simply say surplus in general. It uses the precise term divisible surplus. The state farm contract, Your Honor, on the other hand, refers to the apportionment of dividends each year. And again, apportionment is a term of art. In the insurance context, again consistent with Lubin and the other decisions, when a company ascertains the divisible surplus, it then apportions it among the policies. Ascertainment and apportionment are two terms of art. And when state farm uses the term apportionment, it can only mean apportionment of the same divisible surplus that's referenced in the country life policy. And that the case law says is the remainder that goes to policyholders as divisible surplus in light of the contingency reserve determination. The legislative history is absolutely clear. And the district court erred because it looked solely at the contract language when the law is clear under cases cited in our brief, including Colby, that where there's a statutory requirement that certain language be included in a contract, it's the intent of the legislature, the legislative intent that governs, not the intention of the parties to the contract. Well, that incorporates 224, but not 243. 243 is not a part of the contract. That's a regulation of the financial affairs of life insurance companies. It's not a required provision, standard provision, in a life insurance contract. That's correct, Your Honor. 224 is the required provision. That must be read in pari materia with 243. No case stands for that proposition. Excuse me? No case stands for that proposition. There's no case that has interpreted section 243 specifically, Your Honor. Right, or said that it's incorporated into life insurance contracts delivered in Illinois. No, but the case law does say when you read the two statutes together, there's no requirement. That's just a general principle. I'm talking about your argument that 243 is incorporated into the contract, the life insurance contract, and can be litigated in a breach of contract claim. There's no case that says that. 243 is not a standard life insurance contract provision. That's 224. 243 has to do with the state's regulation of the financial health of life insurance companies. You're correct that 243 does not include a requirement that it be inserted in the contract. 224 does. However, I would disagree that section 243 is concerned with the financial regulation of insurance companies solely. The legislative history for that statute is You're conceding that it's not incorporated into the contract. I am. The legislative history, the annotated code specifically, by the insurance So if it's not incorporated into the contract, how can it be the subject of a breach of contract claim? Because the language of the contract in 224, which talks about surplus, is talking about divisible surplus. And divisible surplus, by definition, is the surplus in which policyholders are entitled to participate in the excess of contingency reserve. That is exactly what Lubin characterized, and that is how the entire process works. Did you make this argument below about the surplus being a term of art and being ambiguous and you have to look to the legislative history? Below, we made the argument that if the contract were ambiguous, we have offered one interpretation. Defendants offer diametrically opposed interpretation. We made the argument that if the contract is ambiguous, then the court cannot grant a motion to dismiss based upon But my question was a little bit different. Did you make the argument with respect to the surplus issue? Because I didn't see that below. That seems to be something that you're raising here for the first time. We argued that the statutes had to be read together. I understand that. I'm focusing in on your argument here about surplus. And if the court looks to surplus and the meeting in the case law of surplus, did you make that below? I didn't see it. Yes, we argued. We quoted extensively from Lubin and the definition of Lubin and the process outlined in Lubin in which the court defined what a contingency reserve is, which is the amount that the company retains, and what divisible surplus is, which is the amount that must be paid to policyholders that is in excess of the contingency reserve. At the time these statutes were adopted, contingency reserve had an established common meaning addressed in Lubin, which is that that's the amount that the company retains. Divisible surplus had a similar well-established meaning, which was the excess amount that had to be distributed above the contingency reserve. I see that I'm running into my rebuttal time. So if the court has any further questions, I'll answer them. If not, I will reserve the remainder. Thank you. Thank you. Mr. Klug? May it please the court. Michael McLuggage, State Farm Life with Mr. Hutzel. We will respond to Mr. Friedman. Plaintiffs claim of a contract right to receive a defined amount of the company's surplus each year has three components. First is the dividend provisions of their contracts. Second, section 224.1e of the Illinois Insurance Code, which requires a standard policy provision providing in substance that policyholders can participate in surplus. And then section 243 of the code, which provides for contingency reserves but says nothing about contracts or dividends at all. There are straightforward reasons why the contract claims fail. Plaintiffs' rights are defined and limited by their contracts and taken individually or collectively. There's no language in the dividend provision or in the statutes that imposes the contractual mandate that they are pursuing. They also have integration clauses, don't they? I'm sorry? The contracts also both have integration clauses, don't they? They do. They do. The only relevant policy term is the dividend provision. And those provisions in the country policy and the state farm life policy provide that policyholders may receive dividends if declared by the companies. No policy provision requires payment of a defined amount of surplus as dividend. And plaintiffs don't really contend to the contrary. The complaints themselves show that the companies have satisfied their dividend provision obligations. They've considered the eligibility of these plaintiffs for dividends. They have declared dividends for these plaintiffs consistently over 10 or 20 years. And as the complaints also note, these companies have paid hundreds of millions and even billions of dollars in dividends to their policyholders over the last 10 years. Well, also, this is a heavily regulated industry, is it not? It is. And don't you have to make filings with the state insurance regulators being transparent about how you calculate your divisible surplus and how you pay it out and what you retain and what you don't retain, et cetera? So if you were doing it wrong all these years, somebody would have told you. Absolutely. Section 223 of the code, which is directly referenced in Section 243, is the provision for the director of insurance supervision over the company's reserves. And it goes on and on and on for 12 pages or more. 224.1e requires the standard provision. The dividend provisions of the defendant's policy satisfy 224.1e. The complaints, and I'd refer to paragraphs 21 and 29 of the Ochoa complaint and paragraph 20 of the country life complaint, essentially state that the provisions mandated by 224 are included in the participating policies that these companies have issued. The state division of insurance didn't get involved in this case, but they, under the California case, filed something that said that there are no fixed statutory minimum surplus requirements under Illinois law, did they not? That's right. You're referring, I think, to the Hill case? Yes. That's correct. There's nothing in the language of 224.1e that imposes on companies the obligation to dividend a defined portion of surplus, nor is there anything that gives policyholders the right to receive such a defined portion of surplus. There is simply nothing in 224.e to overcome the well-established process by which the companies or their boards decide dividend issues under the longstanding principles of business judgment. The ambiguity argument to which Mr. Friedman referred has been made for the first time on this appeal, but whether it's waived or not, it's wrong. The term participate has a simple meaning. It means to partake of or to share. These plaintiffs have partaken of or shared in surplus. The word surplus is defined as the excess of assets over liabilities. Nothing complicated about that. Participation in surplus really means the eligibility with others to receive dividends, and that's just what the policies provide. In short, there is no term or construction of 224.1e that mandates the contractual remedy, the contractual right to a declaration of dividends in a fixed amount. So there's no support for plaintiffs' claimed contractual right in the first two components of their theory, the dividend provisions of the contract, section 224.1e. So the next step, and Mr. Friedman has gone into it at some length, is that the contingency reserve statute, section 243, creates the missing contractual requirement for a mandated distribution of surplus. This proposition is wrong for multiple reasons, and the actual plain language of the statute is the best indication of what it means. The statute is about contingent reserves. It's not about contract rights. It's not about dividends. It's not about distribution of surplus to policyholders. The plaintiffs have argued, and I'm quoting, that section 243 contains a statutory formula establishing the amount of divisible surplus, if any, that domestic life insurers must distribute as dividends to par policyholders each year. That's at page 6 of their appellate brief. The statute has no such language, and states no such requirement, has no such meaning. The words divisible surplus, distribution, dividends, are nowhere to be found in this contingency reserve statute. There's no reference in section 243 to policyholder contract rights. Section 224.1e and section 243 don't interact, and they don't relate to the same subject matter. 224.1e doesn't refer to 243. 243 does not refer to section 224.1e. And the contingency reserve statute does not cap surplus. Mr. Friedman mentioned the Lubin case. The Lubin case does not purport to construe Illinois law at all. It construes the laws of some 19 other states. It does not address the issues that are raised in this case, and accordingly have no real impact on interpretation of the law as it relates to the claims that are being made here. The Coons case, Coons v. Homelife, involved a New York-issued policy of insurance. So like the contract itself, 224.1e, there's nothing in 243 to give the plaintiffs an additional contract right to a defined percentage of surplus, which is what they're seeking. And, of course, there's no private right of action under section 243 itself. And since section 243 is not a contract provision and can't be enforced through a contract claim to which it's inapplicable, there's no basis for a 243 claim or a 243-focused claim here. That's all I have. If the Court has no questions, Mr. Hutzel can proceed. Thank you. May it please the Court, Alden Hutzel on behalf of Country Life Insurance. Your Honor, we support the comments of Mr. McCluggage, but I'm going to move forward and try not to go over any of the same territory that he's already gone over. One of the things that the plaintiff does in their argument is that they go outside of Illinois, and they look to New York law and Massachusetts law and historical proposed bills from the first part of the 20th century. To be clear, we believe that the language of our policy is clear and unambiguous and that the analysis should begin and end with our policy language in 224, which we don't believe is inconsistent with our policy. But since the plaintiff has raised it, we did want to at least touch on some of the laws in the other state that they pointed to. They say that Illinois law is like New York law and Massachusetts law, and it's our position that it's in fact not. Both Illinois law and Massachusetts law, I'm sorry, New York law and Massachusetts law, New York law it's 4132A3, Massachusetts law it's section 140. Both of those states have a specific statute mandating the distribution to policyholders of a defined portion of the surplus. And to be clear, all of this comes from uniform laws proposed in the early 20th century that offered states different options of how to structure their regulation of mutual insurance companies? There were proposed bills, 17 proposed bills, that came out of some work by the committee that the plaintiff speaks to. That was in about 1906. Massachusetts has actually had their version since the 19th century. So I'm not sure that it followed that. New York, as I recall, enacted their first mandatory distribution statute in, if I'm correct, 1907. So I'm not sure about the timing on all of them. But yes, there was a set of proposed bills. States picked up some of them, not all of them, picked, modified them candidly. I'm not aware of a state that's picked up any bill exactly as it was written. I think legislatures look at it and decide what they believe is right for their states. Okay, so this is not like some other context where there's a uniform law that pretty much every state has adopted, so we can look to the law of other states to figure out what Illinois means. I see. Illinois law means. This is not like the UCC. Right, or some other uniform laws. Their version of the uniform law. No, ma'am, that's not what it is. There was a 1945 case that dealt with Illinois law along those lines that you're talking about, right? A 1945, the Andrews case? Lubin. I'm sorry, the Lubin? Lubin versus equitable life insurance. Oh, it was Andrews and Brown. Both were in the 40s, and I think they did deal with Illinois law. 1945. 1945, right. So, Your Honor, we're dealing with state by state, and that's one point that I think you're highlighting, which is we're dealing with state by state. Massachusetts is different than New York. New York and Massachusetts are different from Illinois. Both are different than the model bills. But the point that I really want to make is that what we're dealing with here is a contract right. It's a policy, and so we have to point to the duty that is owed by the insurance company to the policyholder. As you heard earlier, it's our position that in Illinois, the duty that they say is owed is a mandatory duty to distribute a defined portion of our surplus. That doesn't exist in Illinois. The point I'm making about New York and Massachusetts is it does exist in New York and Massachusetts, and therein lies the difference. The case law teaches us that when, and the plaintiff, let me back up one step. And the plaintiff says when the Illinois General Assembly enacted the statutes that we're discussing today in 1937, 243, etc., that they knew about New York, that they knew about Massachusetts, that they knew about the section of the model bill that mandates distribution. Our response is yes, fair enough. Perhaps they did, but they didn't enact any of those provisions. And the law is clear that if a legislature here, the General Assembly, looks at either proposed or enacted legislation from elsewhere, and makes a decision not to enact the very provision that would actually serve as a basis for the plaintiff's claim here, that evidence is an intent to go a different direction, to achieve a different result. The only case that the plaintiff cites, and I'm mentioning it because it's the only case that the plaintiff cites that speaks in terms of a mandate by a insurance company of a defined portion of surplus to policyholders is the Goldstein case. I mention it just to highlight that that is a Massachusetts case that is enforcing a statute that does not exist in Illinois that is a mandatory distribution statute, and so that case has very little to do with the law in Illinois. So Illinois law is different, as I said. When you compare it to New York and Massachusetts, Section 224 has the operative language in 224, which is a general undefined right to participate, has been in the law for 110 years. The plaintiff says it was changed twice, both in 1937. One to move the deferment period from 20 years to three years. That's a different issue. That's just the start date of your eligibility. It doesn't go to the board's discretion to determine the amount that's going to be distributed. The second was to add the word annually, debate over whether that was actually a change, but accepting that it was. All that speaks to is frequency. Once you're eligible, you'll be eligible to participate every year. Again, doesn't speak to the board's discretion in terms of the amount that's going to be paid. Since 1937, the Illinois General Assembly has modified Section 224 no less than 12 times, so they've been active in this area. In over 110 years, they have never adopted a mandatory distribution statute in Illinois. They have always maintained what even the plaintiffs concede is the historical role of the Board of Directors in determining the amounts of dividends to be paid. Candidly, Your Honors, it's New York and Massachusetts that went a different direction, not Illinois. It has always been the historical role of the Boards of Directors. Illinois has never changed. The plaintiff says there were bad things going on in New York City. Fair enough. But Illinois is not New York, and Illinois is not Massachusetts, and all of these legislatures or the General Assembly here, they have the right to make policy decisions about what they believe is in the best interest for their state. Do those states' laws apply just to pure mutual societies or also to stock life insurance companies? I think they apply to both, is my recollection. I haven't looked at that because some states' laws do apply solely to mutuals, but my recollection is they apply to both, but I'm not positive on that. Your Honor, I see that I'm almost out of time. I will close by saying that this is a contract case. They have to show a duty that we owe to distribute a mandatory defined portion of the surplus. We believe that our contract is clear and should be enforced as written, and we believe that it does not have that duty, and as a result we believe Judge Gettleman's decision was proper, and with respect we believe it should be upheld and affirmed. Thank you. Mr. Friedman? Thank you, Your Honors. The notion that 243 does not impose a cap is contrary to the language of the statute, which specifically states that the company may maintain a contingency reserve not to exceed specified percentages, and that those are maximum percentages. It contravenes the annotated code that was published at the time the statute was adopted, which said that Section 243 establishes a maximum, and that same annotated code analogized Section 243 to the contingency reserve laws in New York, in Massachusetts, in Pennsylvania. The provisions of the Model Act and the Committee 15, every one of those provisions were adopted by the Illinois legislature in 1937. Some verbatim, the language from the 243 section is verbatim from the language of the Model Act. Model Bill No. 1, which prohibited deferred dividends, was enacted in Section 224. So the notion that there were differences among all these statutes, all of which were designed specifically to put a limit on retained surplus, is simply wrong. It essentially would say that the contingency reserve limitation serves no purpose, and it would say that the right given in 224 to participate in surplus, which is by definition divisible surplus, has no meaning at all. It essentially says that the companies, notwithstanding the clear legislative history and clear language of 243, have unfettered discretion. They did before Section 243 was adopted, but when Section 243 was adopted, the specific purpose for the adoption of that statute was to place a limit, a constraint, and a maximum on the discretion of the board. The board still has considerable discretion. They can withhold surplus or declare dividends when they're under the cap of the safety fund law. They can upstream dividends to their parent companies. That all occurs prior to operation of the safety fund law. But you can't argue that there is no cap on the discretion of the board in light of the clear history and language of Section 243. In addition, the fact that policyholders have received dividends in the past is beside the point. What defendants are essentially saying is that we are complying with Section 224 if we deign to give you whatever dividend we decide we should give. And that is an absolute disregard of 243, which sets a maximum of the amount that companies can retain. It essentially makes 224 a contractual right in every contract without a remedy, so long as a dollar of dividends is paid. That is completely at odds with the entire statutory scheme and the entire legislative purpose underlying both 243 and 224. And I see that I'm out of time. Thank you very much. Thanks to both counsel, and the case will be taken under advisement.